IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| TYSHEENA MAY, | ) |
| Plaintiff, | ) |
| vs. | ) COMPLAINT |
| | ) (JURY TRIAL REQUESTED) |
| HORRY COUNTY POLICE DEPT., | ) |
| Defendant. | ) |

The Plaintiff, Tysheena May, by and through her undersigned attorney Bonnie Travaglio Hunt of Hunt Law LLC, does hereby make the following claims and allegations against the Defendant, Horry County Police Department:

**PARTIES AND JURISDICTION**

1. The Plaintiff is a resident of the State of South Carolina.

2. The Defendant, Horry County Police Department (hereinafter referred to as Defendant) is a public entity which is subsidiary of Horry County and subject to Federal Statutes.

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

4. All parties and events herein mentioned are within the jurisdiction of this Honorable Court.

5. This Court has jurisdiction over the parties and subject matter and venue is proper.

**PROCEDURAL HISTORY**

6. That on December 28, 2023, the Plaintiff filed her first charge of discrimination with the EEOC alleging discrimination based on Race and Sex Discrimination, Retaliation and Hostile Work Environment.

7. That the Charge of Discrimination 436-2024-00636 set forth the following:

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

    I. *That I am a current employee of the Employee.*

    II. *That I have extensive experience with the Employer. The Employer was employed from December 2012 to March of 2017 as a Patrol Officer and an SRO. I returned to my employment with the Employer in March of 2018 as a Patrol Officer and have remained employed since then.*

    III. *That on July 8, 2022, I was transferred to Internal Affairs where I was promised that after a year I would be promoted to Inspector.*

    IV. *That when it came time to be promoted, I was informed that there was no money in the budget. I was not promoted.*

    V. *My employer then promoted two Caucasian Male and a Caucasian Female. The Caucasian Female was promoted despite not being not being higher on the promotion list. One of the Caucasian Males was promoted despite not being qualified and ineligible for promotion.*

    VI. *That I filed a Complaint of Discrimination.*

    VII. *That in retaliation for my complaint of discrimination by employer failed to promote me to an SRO position which I had previously held with the Department.*

    VIII. *That I was qualified for the promotion. A less qualified officer was selected for the position.*

    IX.    *That I have been discriminated against based on my Race, Sex, and Retaliated against for my previous complaints in violation of Title VII.*

    X.    *That I have been discriminated against based on Race and Sex in violation of Title VII.*

    XI.    *That I have been subjected to hostile work environment in violation of Title VII.*

    XII.    *That I have been retaliated against in violation of Title VII.*

8.    On February 18, 2024, the Plaintiff filed a second charge of discrimination 436-2024-01058 alleging:

*THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):*

    I.    *That I am a current employee of the Employee.*

    II.    *That I have extensive experience with the Employer. The Employer was employed from December 2012 to March of 2017 as a Patrol Officer and an SRO. I returned to my employment with the Employer in March of 2018 as a Patrol Officer and have remained employed since then.*

    III.    *That on July 8, 2022, I was transferred to Internal Affairs where I was promised that after a year I would be promoted to Inspector.*

    IV.    *That when it came time to be promoted, I was informed that there was no money in the budget. I was not promoted.*

    V.    *My employer then promoted two Caucasian Male and a Caucasian Female. The Caucasian Female was promoted despite not being not being higher on the promotion list. One of the Caucasian Males was promoted despite not being qualified and ineligible for promotion.*

VI. *That I filed a Complaint of Discrimination.*

VII. *That in retaliation for my complaint of discrimination by employer failed to promote me to an SRO position which I had previously held with the Department.*

VIII. *That I was qualified for the promotion. A less qualified officer was selected for the position.*

IX. *That after my complained my supervisor started to treat me differently and with hostility.*

X. *That I filed a formal complaint regarding my supervisor and requested a transfer.*

XI. *That I have been discriminated against based on my Race, Sex, and Retaliated against for my previous complaints in violation of Title VII.*

XII. *That I have been discriminated against based on Race and Sex in violation of Title VII.*

XIII. *That I have been subjected to hostile work environment in violation of Title VII.*

XIV. *That I have been retaliated against in violation of Title VII.*

9. The Defendant filed a position statement on May 14, 2024, addressing both charges of discrimination.

10. That the EEOC issued a right to sue on regarding both charges of discrimination on March 20, 2025. The EEOC posted the Right to Sue to Portal on March 28, 2025.

> ***DETERMINATION OF CHARGE***
> *The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.*
> ***NOTICE OF YOUR RIGHT TO SUE***
> *This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date*

*you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)*
*If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal*

*and upload the court complaint to charge 436-2024-00636.*

   *DETERMINATION OF CHARGE*
*The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.*
*NOTICE OF YOUR RIGHT TO SUE*
*This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court,* **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** *Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)*

*If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 436-2024-01058.*

11. That not more than 90 days have passed since the issuance of the Right to Sue.

## FACTS

12. That the Plaintiff is an African American Female.

13. The Plaintiff was employed with the Defendant from December 2012 to March 2017 as a Patrol Officer and an SRO. In March of 2018 the Plaintiff returned as a Patrol Officer where she remained.

14. Throughout the Plaintiff's employment she has received the policies and procedures of the Defendant and followed those policies and procedures.

15. The Plaintiff has had excellent performance evaluations throughout her employment with the Defendant.

16. On Wednesday, June 27, 2022, Inspector Stephen Phillips sent a department wide email advising of an open position in the Office of Professional Standards.

17. On Wednesday June 6, 2022, the Plaintiff submitted an officer report advising of her interest in the position in the office of Professional Standards. Only three individuals applied for the position.

18. On Thursday July 7, 2022, the Plaintiff interviewed for the position in the Office of Professional Standards with Inspector Hemingway and Inspector Phillips.

19. On Friday July 8, 2022, a department-wide email was sent advising that the Plaintiff was selected for the position.

20. During the initial meeting of the Office of Professional Standards, the Plaintiff was informed by Deputy Chief Davis and Chief Davis that once she obtained her National Internal Affairs Certification, worked 10 cases or one year in the department from her transfer date, she would be reclassified as an Inspector with the rank of Sgt with Sgt pay. The Defendant falsely claims there is absolutely no evidence of this agreement with the Plaintiff. However, the Plaintiff performed all the requirements of the agreement.

21. The Plaintiff attended the Internal Affairs Conference and Certification Training from September 12, 2022, to September 16, 2022, and received her certification. The Plaintiff continued to work in the Office of Professional Standards with her coworkers, Inspector Hemingway and Inspector Phillips. The Plaintiff carried the same case load

and performed the same duties and responsibilities without the rank or pay of the position.

22. From March 6 to March 10, 2023, the Plaintiff attended the Force Science Certification Court with SLED. Force Science trains students to recognize and articulate important psychological, biological and physiological factors that influence human behavior and memory in use of force encounters and pursuit situations. In addition to the week long class, the Plaintiff completed and passed the three required exams to become Certified.

23. In April of 2023, the Plaintiff attended a meeting with Deputy Chief Davis and Captain Justin Wyatt where the Plaintiff was informed that Deputy Chief Davis was having difficulty reclassifying the Plaintiff's position to Sgt/Inspector with Sgt rate of pay. In the alternative, the Plaintiff was informed that the department would be able to fund her raise due to a Senior Detective retiring and that they would move his position.

24. On June 8, 2023, Chief Joe Hill sent out a department wide email stating that Deputy Chief Davis was retiring.

25. The Plaintiff asked Chief Joe Hill about the status of her promotion and salary increase. Chief Hill informed the Plaintiff that he would check on the status.

26. June 30th is the last day of the fiscal year at the Horry County Police Department.

27. Other white males were promoted with in the department.

28. On June 30, 2023, there were several promotions and transfers within the department. The Plaintiff did not receive her promotion or her increase in pay despite performing all aspects of the agreement with the Department.

29. On June 30, 2023, Chief Hill issued a department-wide email that set forth the following:

*All,*

*With the support of the Council, County, and community, we've reached an exciting moment in HCPD history—we begin FY24 with a new Bureau, two trusted leaders promoted to Deputy Chief, and even more new opportunities ahead.*

*In recent weeks, Deputy Chief Kris Leonhardt has been assigned the newly created Operational Support Bureau (OSB). Effective immediately, Captain Justin Wyatt will serve as the OSB commander.*

*The OSB includes the following units: Special Operations, Traffic Enforcement, Community Engagement, Animal Care Center & Environmental Services, River Patrol, Regulatory, and Airport.*

*The vision for OSB is to provide resources to patrol, investigations, and our community, particularly in high-risk and/or specialized circumstances. Over the next few years, I see the bureau expanding with additional positions and units.*

*Deputy Chief Brandon Strickland has been assigned to the Administration Bureau. Captain Michael Kathmen will serve under him as the CID commander, and Captain Dave Langlais will serve as the Support Services Commander.*

*The administration remains committed to recruiting and hiring officers of integrity, coordinating and providing quality officer training, and conducting in-depth case investigations as needed.*

*Deputy Chief Winburn will send announcements of subsequent transfers and promotions in the coming days.*

*Big moves are being made to ensure continued growth for this agency. I know this will set us up for even greater things in the future.*

*In addition to the updates mentioned here, we continue to work toward bringing the 5th Precinct online, adding a state-of-the-art training facility and future expansions to meet the needs of a growing community.*

*We have a skilled leadership team that focuses on professional development, officer wellness, and planning ahead for service needs as our community grows. I trust their judgment and motivations and hope you will also lend them your continued support.*

*A copy of our updated HCPD Organizational Chart will be forthcoming. If you have any questions about the departmental changes, the new leadership team will make the rounds to all precincts and units to answer questions and discuss our vision.*

*Stay safe out there.*

*Joe*

30. The Plaintiff's promotion was not included in the email.

31. The Plaintiff waited two weeks and checked back with Chief Hill about the reclassification. On July 12, 2023, the Plaintiff was notified that she would not be receiving the position in Internal Affairs as there was a lack of funding. The Plaintiff asked if she was required to carry the same case load as her coworkers without the same pay. The Plaintiff was informed that she would be expected to perform the same tasks without the same pay.

32. On July 17, 2023, Justin Miller sent an email regarding Promotional Opportunities:

***UPDATES TO THE PROMOTIONAL PROCESS***
***EFFECTIVE July 17, 2023***

*ATTENTION ALL:*
*Due to the current eligibility lists for promotions being nearly exhausted, we will be conducting another promotional process. This process will be modified due to time constraints with the written test being removed for Corporal/Detective and Sergeant, and the project being removed for Lieutenant. The eligibility list from this process will be effective from September 1, 2023 – March 31, 2024. A complete promotional process will still occur beginning in December 2023 for an eligibility list to go into effect April 1, 2024.*
*The promotional process events will occur in no particular order and each candidate will be given sufficient notice prior to an event taking place. Weight percentage is listed below next to each category.*

| *PROMOTIONAL PROCESS EVENTS* ||
|---|---|
| *CORPORAL/DETECTIVE:* | *-Performance evaluation from candidate's direct supervisor (35%)*<br>*-Anonymous coworker evaluation (25%)*<br>*-Interview (25%)*<br>*-Resume evaluation (15%)* |
| *SERGEANT:* | *-Performance evaluation from candidate's direct supervisor (35%)*<br>*-Anonymous coworker evaluation (25%)*<br>*-Interview (25%)*<br>*-Resume evaluation (15%)* |
| *LIEUTENANT:* | *-Performance evaluation from candidate's direct supervisor (35%)*<br>*-Anonymous coworker evaluation (25%)*<br>*-Interview (25%)* |

|  | *-Resume evaluation (15%)* |
|---|---|

***Details***

- *Categories of the promotional process could be altered based on the availability of each candidate's supervisors or coworkers. This information will be gathered from a "promotion candidate information form" that will be sent out with the promotion application. If any part of the process is altered, the entire field of candidates for that rank will be notified of any changes.*
- *For Corporal/Detective/Sergeant/Lieutenant candidates, a rankings list will be established at the end of the process. Each ranking list will be emailed out to the candidates for the rank they were a candidate for. The rankings list will show the candidate's assigned promotion number in lieu of their name. The promotion number will be assigned to each candidate at the beginning of the process. A separate email will be sent to each candidate and it will include the scores for each category as well as their ranking.*
- *The top 15 candidates for each rank will be considered for promotion. For the top 15 Lieutenant candidates only, the Chief of Police will designate each Lieutenant candidate as "highly qualified" or "qualified".*
- *If a top 15 candidate of any rank is offered a promotion and does not accept it, that candidate will be offered a promotion one additional time and will then be moved to the 15th position on the rankings list.*
- *If candidates want to see the documented results of their promotional process, for the purposes of transparency, and the ability to improve, they may contact Lt. Miller up to 90 days after the promotional process is completed and schedule an appointment.*
- *It will be REQUIRED to participate in the anonymous coworker evaluations of candidates if you are called upon. You will not be eligible for promotion for the current year or the following year if you do not participate. The only person who will know that you participated will be Lt. Miller.*
- *Any supervisor or coworker of a candidate who is selected to participate in a candidate's promotional process will be contacted directly via email by Lt. Miller and will be provided with the necessary document(s).*

***Instructions***

- *If you are interested in participating in the promotional process, make sure you are eligible based on the minimum standards that are attached.*
- *Completely and accurately fill out the attached Horry County Employment Application as well as the Candidate Information Form. If you're applying for both Corporal and Detective, only one application is necessary. Just indicate "Corporal/Detective" on the application.*
- *Email both documents to Ashley Maher from Human Resources <u>and</u> Lt. Miller by 1700 on July 21, 2023.*
- *Once the application is reviewed for eligibility, each candidate will be contacted throughout the promotional process by Lt. Miller with instructions/dates/times/locations of each event.*

10

*Justin M. Miller | Lieutenant*
**Horry County Government**
*Horry County Police Department*
*2560 N. Main Street Conway SC, 29526*
*Tel: (843) 915-7994 | Fax: (843) 248-1818 | millerj@horrycountysc.gov*

33. Upon seeing the email, the Plaintiff made the decision to transfer back to CID and apply for the promotional process.

34. On August 21, 2023, the Plaintiff was transferred back to CID/Homicide.

35. On September 1, 2023, the Promotional Ranking List was issued. The Plaintiff was placed third overall on the Sergeant List.

36. On September 5, 2023, the Department created a Sergeant position for a white female, Misty Gore. I was later informed that Captain Justin Wyatt used the funds from the retired Detective positions for the creation of Gore's position. Misty Gore received a Sgt position despite being list below the Plaintiff on the list.

37. Another white male (Nick Izen) was also promoted.

38. These two promotions occurred after the Plaintiff was informed that there was no money in the budget to promote her. The white male was ineligible for the promotion due to the fact that he had not been in a Cpl. position as required by policy.

39. On November 17, 2023, Deputy Chief Leonhardt issued an email that the Sepcial Operations Bureau was accepting lateral transfers for the temporary sergeant position in the SRO program. DC Leonhardt also advised that any current sergeants or individuals on the listed in the top three of the promotion to sergeant list could apply for the position. The Plaintiff properly applied for the position.

40. On December 8, 2023, the Plaintiff interviewed for an SRO position.

41. On December 12, 2023, the Plaintiff received a call from Deputy Chief Brandon Strickland, Chief Joe Hill, and Captain Justin Wyatt seeking information regarding her interest in the patrol sergeant position. The Plaintiff informed them at that time that she would be returning from FMLA on December 18th and that she had just been diagnosed with diabetes.

42. No post was made as to who was hired for the SRO sergeant position. The Rankings list was also not distributed.

43. On December 28, 2023, the Plaintiff filed a charge of discrimination.

44. On December 29, 2023, Lt Miller sent out an email for the 2024 Promotional process. The Plaintiff properly applied.

45. On December 29, 2023, the Plaintiff spoke with Lt. Kevin Cast. The Plaintiff specifically requested information on how she could have improved her interviewing skills because of the SRI Sgt interview. Lt. Cast advised the Plaintiff that there wasn't really anything she could have done because she did a great job. Lt. Cast also informed her that Casey Guskiwicz had an edge over the Plaintiff. Lt. Cast informed the Plaintiff that Guskiwicz had spoken to other SRO's he knew up north and had received some ideas from them. The Plaintiff questioned Lt. Cast regarding this issue and the fact that they were promoting an individual based on advice he had received from SRO's from other states and that carried more weight than the Plaintiff's experience when Guskiwicz had none as an SRO officer.

46. In January of 2024, the Defendant's employees began to treat the Plaintiff differently. Whereas the command staff members would stop by her office two to three times a week to speak and check in, all command staff members stopped speaking to the Plaintiff.

47. On January 3, 2024, Chief Joe Hill sent a department-wide email advising of the promotions that would be effective January 6, 2024. Inspector Stephen Phillips was promoted to the Lt.

12

4:25-cv-04231-JD-TER     Date Filed 05/20/25     Entry Number 1     Page 13 of 20

over CSI and Sgt. Van Sissel was transferred to Internal Affairs. Sgt. Van Sissel was transferred to IA. The Defendant transferred a white male into the position, who was less qualified than the Plaintiff. The Defendant further failed to properly post the position. If the Defendant had properly posted the position the Plaintiff would have been the most qualified as she had already obtained her certifications and worked in the department for a year.

48. On January 3, 2024, the Defendant also issued a memorandum stating that it was now mandatory that if you applied for a specialized unit you were required to serve as a Sgt on patrol for a year before being placed in that unit. The Plaintiff had patrol supervision experience at the time and was qualified for the position in IA.

49. After the memorandum was released, DC Leonhardt posted a position for a vacancy with the Community Engagement Unit. The Plaintiff was the next up for promotion but was not placed in the position.

50. On January 4, 2024, the Plaintiff rescinded her application for promotion to Sergeant due to a medical diagnosis. The Plaintiff rescinded her application to due her medical diagnosis that was not conducive to 2 weeks on days and 2 weeks on nights. The Defendant would not accommodate the Plaintiff's medical condition, so she rescinded her application.

51. The Plaintiff specifically informed the Defendant of the following: "Good afternoon! Please accept this email as my rescinding my application to participate in the Sergeant Promotion Process. As I explained to Chief Hill, DC Strickland, and Capt. Wyatt, when they gaged my interest in a Sergeant position on patrol, I recently received a medical diagnosis that would be difficult to manage while working a rotating day and night schedule. It will take approximately a year or more to get it managed and under control, and I would hate to have to turn down the Patrol Sergeant position because the schedule isn't beneficial to my health.

13

I feel it would be unfair to waste the department's time and resources. Thank you for your assistance in this process."

52. On February 7, 2024, the Plaintiff filed an officer's report and a request to be transferred to Special Victim's Unit.

*Attention: Capt. Kathman (through channels)*
*Reference: Transfer to Special Victim's Unit*
*• The purpose of this officer's report is to request a transfer to the Special Victim's Unit due to an incident that occurred between myself and Sgt. Jackson, which has caused me to lose trust in her as a leader, and puts me in a position where working directly under her command would cause a hostile work environment.*
*Below I will outline the incident:*
*• On Monday, January 29, 2024, I went to the office of Det. Samantha Salkeld to ask her if she was aware that we have to do Officer narratives for our investigation actions. She didn't know that we did that so I walked her through the steps on how to do it. I didn't remain in the office long because I got a dismissive vibe from her. After I left her office, I went around to Det. Jonathan Barrett and had the same conversation with him that I just had with Det. Salkeld.*
*• Later that evening, I was looking through my dashboard on P1 and noticed that both detectives had written their narratives. I read them, and they weren't too standard for a homicide investigation, which is understandable because they just became property crime detectives.*
*• I called my Sgt., who is Amy Jackson. She had already left work, so I asked her if she was planning doing work tonight and she said probably. I said well I need you to go look at these narratives because they are written properly but I feel like that for a Sgt to handle and I'll stay in my lane.*
*• On Tuesday, I was in the office of Lt. Greg Lent with Sgt Ryan Seipt, when Sgt. Jackson came in. She advised me that she had spoken with the detectives, and their reports had been corrected. She then proceeded to tell me that I need to watch what I say to people and learn how to talk to people. I asked what she was talking about and she said you just need to learn to talk to people. I said I didn't talk down to her. I talked to her from a training standpoint because I knew she probably didn't know how we did things.*
*I then said to Sgt. Jackson that Det. Salkeld should learn not to be dismissive of people trying to help her. I then explained that I explained the process the same way to Detective Barrett.*
*• Sgt. Jackson then tells me that she "knows" I probably talked down to Detective Salked because I was "bossy" and rude to her on the phone when I called her. I asked her in what way and in which part of our conversation I was "bossy". Sgt. Jackson couldn't answer. I didn't tell her that another detective was in the room when I called her.*
*• I then asked Sgt. Jackson, how I went from being the "person in the unit, the person in the unit who can talk to anyone and the nicest one" to being bossy, rude, and condescending toward people. And she was like you just need to learn to how to talk to people because that was unacceptable.*
*I then pointed out to her that I couldn't believe that she has worked with me for five years and knows I've never been accused of being demeaning toward anyone in speech or action, but jumps all over this accusation about me and doesn't even come to me to ask me about what happened. Then goes to lie about the interaction she had with me on the phone. This is my direct supervisor, and I feel if she jumped to someone else's defense about me with something so small, what would be the next thing?*
*• On Monday, February 5, 2024, Captain Kathman, Lt. Lent, Sgt. Jackson, and I met to attempt find a road to resolution.*
*• I told Captain Kathman and Lt. Lent that I would take some time to think on the conversation had on Monday, February 5, 2024, and the more I think about it, the more it disturbs me. When Sgt. Jackson said bossy may not have been the right word, and then said that I was aggressive, after we already discussed how the word made me feel, she basically double downed on the angry black woman trope.*
*• It also bothers me that she also said she thought she could talk to me the way she did, and I would be understanding and not be offended because of the prior dynamics of our relationship, but she obviously*

14

> *didn't give me the same grace when I talked to her on the phone. I believe she has a one-sided view, and I just don't feel that she was sincere.*
> *• I felt the entire conversation was an I may have done "ABC," and I'm sorry, but you did "XYZ," which, in a way, disqualifies the apology and attempts to justify her actions. I feel she gave platitudes today, and her attitude was very much. You may not trust me, but you'll learn to or be moved because I'm not getting moved, and that just troubles me. I love being a detective. I love homicide, but I still stand firmly that I don't trust her as a leader*
> *As a seasoned detective, I am a great asset to CID, but after this incident, I believe the best environment for me to do that would be the Special Victim's Unit, as remaining in Sgt. Jackson's direct chain would cause a hostile work environment. Thank you for your consideration in this matter.*

53. On February 18, 2024, the Plaintiff filed a second charge of discrimination.

54. On February 19, 2024, the EEOC acknowledged the filing of the charge of discrimination.

55. The Plaintiff was subjected to differential treatment based on race and sex.

56. The Plaintiff was targeted because of her race and sex, subjected to a hostile work environment and was denied promotion in retaliation for her complaints.

57. That as a direct and proximate result of the Defendant's intentional and unlawful action of discrimination against the Plaintiff, the Plaintiff has suffered lost wages, emotional damages, compensatory and consequential damages.

58. That the Plaintiff is entitled to an award of actual damages, compensatory, consequential, and punitive damages against the Defendant for her unlawful discrimination and hostile work environment.

59. That as a direct and proximate cause of the Defendant's wrongful discrimination, failure to promote, failure to provide equal opportunity and retaliatory actions based on Race and Sex Discrimination, Retaliation and hostile work environment of the Plaintiff, the Plaintiff:

   a. Suffered the loss of her job;

   b. Suffered the loss of benefits associated with her job;

   c. Suffered future lost wages and benefits;

   d. Suffered consequential and compensatory damages;

    e.    Suffered emotional damages;

    f.    Incurred attorney's fees and costs as a result of having to bring this action.

60. That the Plaintiff is entitled to an award of damages against the Defendant for actual damages, consequential damages, punitive damages, attorney's fees, costs of this action and other damages, such as this Honorable Court deems appropriate and just appropriate.

<b><u>FOR FIRST CAUSE OF ACTION</u></b>

<b><u>DISCRIMINATION IN VIOLATION OF TITLE VII BASED ON RACE AND SEX</u></b>

61. Paragraphs one (1) through sixty (60) are hereby incorporated verbatim.

62. The Defendant is an employer as defined by Title VII.

63. That the Plaintiff is an employee as defined by Title VII.

64. That the Plaintiff was considered an exemplary employee.

65. That while she has been employed with the Defendant, the Plaintiff has been able and has performed her job duties in a satisfactorily level of the Defendant.

66. That throughout the Plaintiff's employment the Plaintiff qualified for all positions that she was denied.

67. That the Defendant refused to promote the Plaintiff to the Professional Standards position based on her sex. The Defendant now claims there was no agreement.

68. That the Defendant considered the Plaintiff's sex and race when considering any and all employment decisions. The Plaintiff was subjected to a hostile work environment and discrimination that no reasonable person would have continued to suffer.

69. That the Defendant treated persons outside the Plaintiff's protected categories more favorably.

70. That the Defendant violated its own policies and procedures when it failed to promote the Plaintiff, failed to consider her when other positions became available, failed to properly post positions and failed to consider the plaintiff based on her race, sex or previous complaints.

71. That the Defendant discriminated against the Plaintiff based on her race and sex in violation of the law.

72. That the Defendant is the proximate and direct cause of damage to the Plaintiff.

73. That any and all reasons offered by the Defendant as a reason for failing to promote the Plaintiff are pretextual.

74. That the Plaintiff has suffered severe emotional damages as a result of the Defendant's discrimination against the Plaintiff.

75. That the Plaintiff was subjected to discrimination based on consideration of her race and sex, and complaints regarding the work environment.

76. That as a direct result of the Defendant's violation of Title VII the Plaintiff has suffered:
    a. Lost wages and lost benefits;
    b. Future lost wages and Benefits;
    c. Economic damages;
    d. Economic hardship;
    e. Lost wages;
    f. Suffered anxiety, humiliation and emotional damages.

77. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of

this action and all other damages available pursuant to the Title VII for the Defendant's discrimination against the Plaintiff.

## FOR A SECOND CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT

## IN VIOLATION OF TITLE VII

78. Paragraphs one (1) through seventy-seven (77) are hereby incorporated verbatim.

79. That the Plaintiff is an employee of the Defendant as defined by Title VII.

80. That the Defendant is an employer as defined by Title VII.

81. That the Defendant subjected the Plaintiff to harassment and hostile work environment.

82. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

83. That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's race, sex, and complaints.

84. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

85. That the Plaintiff has been damaged as a result of the Defendant's work environment.

86. That the Defendant are the direct and proximate cause of damage to the Plaintiff.

87. That the Plaintiff is entitled to actual, compensatory, consequential and punitive damages from the Defendant as a result of the hostile work environment.

## FOR A THIRD CAUSE OF ACTION

## RETALIATION IN VIOLATION OF TITLE VII

88. Paragraphs one (1) through eighty-seven (87) are hereby incorporated verbatim.

89. That the Plaintiff participated in a protected act when she reported discrimination and retaliation.

90. That the Plaintiff was retaliated against for reporting violations of her Civil Rights Act.

91. That the Defendant took adverse employment action against the Plaintiff when the Defendant refused to promote the Plaintiff because she engaged in actions protected by the law.

92. That the Defendant treated the Plaintiff differently regarding the terms and conditions of her employment when she reported discriminatory actions. The Plaintiff suffered retaliation for her complaints regarding discrimination.

93. That, as a direct and proximate result of the Defendant's intentional unlawful and retaliatory actions, the Plaintiff:

    a. Suffered lost wages and lost benefits;

    b. suffered severe emotional distress;

    c. suffered future lost wages and future lost benefits;

    d. suffered economic damages;

    e. Loss of employment;

    f. Loss of Future employment;

    g. incurred attorney fees for this action;

    h. incurred costs of this action; and

    i. will incur future attorney fees and costs.

94. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

WHEREFORE, the Plaintiff prays for an award of damages against the Defendant in the amount of:

A.  Actual damages;

B.  Consequential damages;

C.  Compensatory damages;

D.  Any and all damages permitted under Title VII;

E.  Punitive damages;

F.  All other damages under South Carolina Law;

G.  Other damages such as this Honorable Court deems appropriate and just.

Respectfully Submitted,

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com

May 20, 2025